UNITED STATES of America, Plaintiff,

v.

Dena Lynne BOVEE, and Tim Elliott Bovee, Defendants.

No. CRIM.02–50023.

United States District Court, E.D. Michigan, Southern Division.

Nov. 22, 2002.

David A. Koelzer, Federal Defender, Federal Defender Office, Flint, MI, James L. Witzel, Witz, Fawley, East Lansing, MI, for defendants.

Nancy A. Abraham, U.S. Attorney's Office, Flint, MI, for U.S.

### *OPINION AND ORDER*

GADOLA, District Judge.

Defendants pled guilty to a two-count Indictment involving marijuana, but they did not admit to the number of marijuana plants at issue. Instead, the parties have asked the Court—not a jury—to determine the number of marijuana plants for which Defendants will be held criminally liable. The Court has made that determination and, for the reasons set forth below, finds that the Government has proved beyond a reasonable doubt that Defendants are guilty of (1) knowingly conspiring with each other to manufacture more than one hundred (100) marijuana plants and (2) knowingly manufacturing and aiding and abetting each other to manufacture more than one hundred (100) marijuana plants.

### I. BACKGROUND

On April 10, 2002, a federal grand jury returned a two-count Indictment against Defendants. Count One charged Defen-dants with conspiracy to manufacture marijuana. *See* 21 U.S.C. § 846. Specifically, Count One of the Indictment stated:

> That beginning sometime in the fall of 2001 and continuing until about January 4, 2002, in the Eastern District of Michigan, defendants DENA LYNNE BO-VEE and TIM ELLIOTT BOVEE did knowingly conspire with each other to manufacture more than one hundred marijuana plants, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

Count Two charged Defendants with manufacturing marijuana, *see* 21 U.S.C. § 841, and aiding and abetting, *see* 18 U.S.C. § 2. Specifically, Count Two of the Indictment stated:

> That beginning sometime in the fall of 2001 and continuing until about January 4, 2002, in the Eastern District of Michigan defendants, DENA LYNNE BO-VEE and TIM ELLIOTT BOVEE did knowingly manufacture and aid and abet each other to manufacture more than one hundred marijuana plants, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections [sic] 841(a)(1).

At a hearing before the Court on July 30, 2002, Defendants entered pleas of guilty to each count of the Indictment without Rule 11 plea agreements. Fed. R.Crim.P. 11. However, the pleas were entered with the condition that Defendants reserved the right to contest the element of the offenses requiring that there be more than 100 marijuana plants. *See* 21 U.S.C. § 841(b)(1)(B)(vii). The parties then stipulated to having the Court conduct a hearing, after which the Court—not a jury—would determine the number of marijuana plants for which Defendants would be held accountable.

The Court held the aforementioned hearing on August 22 and 23, 2002. The Court heard from two witnesses. The Government's witness was Scott Shenk, a Detective–Sergeant for the Shiawassee County Sheriff's Department. Defendants' expert witness was Katherine L. Gross, a professor in the Plant Biology Department of Michigan State University.

Further, the Court received into evidence a number of exhibits, including the following Government exhibits, which pertained to the execution of a search warrant on January 4, 2002, at Defendants' Shiawassee County home:

| Exhibits 1–112 | 112 marijuana plants seized by law enforcement officers. |
|---|---|
| Exhibit 113 | 4.49 grams of loose marijuana seized by law enforcement officers. |
| Exhibit 114 | 1.9 pounds of marijuana material found in a trash barrel and seized by law enforcement officers. |
| Exhibit 115 | Unspecified amount of marijuana stems, marijuana seeds, and loose marijuana taken by law enforcement officers from Defendants' driveway on January 3, 2002, the night before the execution of the search warrant. |
| Exhibit 116 | 14.50 grams of loose marijuana seized by law enforcement officers. |
| Exhibit 118 | Unspecified amount of loose marijuana seized by law enforcement officers. |
| Exhibit 119 | Unspecified amount of parts of marijuana plants (i.e., no root structures) seized by law enforcement officers. |
| Exhibit 125 | Bag used by law enforcement officers to hold 35 marijuana plants (Exhibits 78–112) (only 34 plants were in the bag, however, when the bag was admitted into evidence because one plant was sent to a lab for testing). |

Detective–Sergeant Shenk authenticated these exhibits for the Government.

Defendants objected to the admission of Exhibits 113, 114, 115, 116, 118, and 119 on the grounds that these non-plant exhibits were not relevant to the only issue before the Court—namely, the number of plants.[1] *See* Tr. at 36–40.[2] The Government responded that while these exhibits did not go to the issue of the number of plants, these exhibits were relevant to the determination and calculation of the number of plants. *See id.* The Court agreed with Defendants that these six exhibits were not relevant to the number of plants, but the Court admitted them because they were relevant, as the Government argued, to process by which law enforcement officers distinguished between plants and non-plant material. *See id.*

Over the course of the hearing, two disputes between the sides developed. The first dispute was whether approximately sixteen[3] of the 112 marijuana plants had

---

**1.** Note that while Defendants objected to the aforementioned six non-plant exhibits, Defendants did not object to Exhibit 125. *See* Tr. at 34.

**2.** "Tr." refers to the Transcript of the August 22–23 hearing.

**3.** Defendants have effectively conceded that only sixteen specimens are in question. Detective–Sergeant Shenk identified, on cross examination, some seventeen specimens between Exhibits 78 and 112, which did not have roots at the time of the hearing. *See* Tr. at 48–53. Similarly, Professor Gross identified some eighteen specimens between Exhibits 78 and 112, which did not have roots at the time of the hearing. *See id.* at 90–93. Discounting for small differences, Defendants' brief consolidates these two identifications and argues that sixteen specimens were identified by both witnesses as having no roots at the time of the hearing. *See* Def. Br. at 3–4 (citing Tr. at 48–53 and 90–93). The sixteen are: Exhibits 78, 79, 80, 81, 83, 84, 100, 101, 102, 104, 105, 106, 107, 108, 110, and 111. *See* Def. Br. at 4 n. 3.

root structures. *See* Def. Br. at 3–4 (citing Tr. at 48–53 and 90–93). Exhibits 1–77 were uncontested; both sides agreed that these specimens had roots. The disputed sixteen plants came from Exhibits 78–112, a group of specimens seized together from Defendants' "grow room" underneath a television stand. *See* Tr. at 33. As to the thirty-five specimens of Exhibits 78–112, both sides agreed that nineteen had roots. *Therefore, both sides agreed that ninety-six of the 112 specimens were plants with roots.* This point is important because if in fact only ninety-six specimens had roots, Defendants would not be criminally liable for more than 100 plants.

The second dispute evolved from the first. After Defendants attacked some of the plants, the Government, Defendants argue, proceeded to misuse the non-plant exhibits in an attempt to prove the number of plants. Specifically, Defendants alleged that the Government misused Exhibit 114 during questioning of Professor Gross on cross examination in an attempt to prove the existence of twelve plants in addition to the 112 already admitted as plants. *See* Def. Br. at 3–4; Tr. 99–115. This point is important because if in fact sixteen of the 112 plants did not have roots and if in fact there were twelve additional plants with roots, then there would still be more than 100 marijuana plants for which Defendants would be held responsible.

These developments prompted Defendants to request that the Court suspend the hearing and allow the parties to brief these two disputes. Out of a sense of fairness and caution, the Court granted Defendants' request. Per the Court's order, transcripts were prepared and distributed to both sides. Both sides submitted timely briefs. The Court then held a hearing on November 4, 2002, to hear argument from both sides.

## II. LEGAL STANDARD

### A. Burden of Proof

The burden of proof on the Government is reasonable doubt; that is, the Government must prove beyond a reasonable doubt that the number of marijuana plants exceeds 100 plants. *See United States v. Rebmann,* 226 F.3d 521, 522 & n. 1 (6th Cir.2000) (citing *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)); *see also United States v. Patterson,* 292 F.3d 615, 623 (9th Cir.2002) ("all parties ... proceeded on the assumption that the number of plants at issue did not have to be proven beyond a reasonable doubt before a jury ... this assumption [is] no longer valid in light of *Apprendi*").

### B. Definition of a Plant

To determine what a "plant" is, the Sixth Circuit has set forth a clear rule: a specimen is a "plant" "if there is readily observable evidence of root formation." *United States v. Edge,* 989 F.2d 871, 879 (6th Cir.1993).

In its holding, the Sixth Circuit followed, *inter alia,* a Tenth Circuit opinion, *United States v. Eves,* 932 F.2d 856 (10th Cir. 1991). The Sixth Circuit's quotation of *Eves* sheds further light on the proper scope of the legal definition of a plant:

Congress [did not] intend[ ] "plant" to be construed other than by its plain and ordinary dictionary meaning.... We do not even begin to believe that Congress intended an abstruse interpretation that would require police officers ... to undergo botanical training in order to observe marijuana.... [I]f it looks like a "plant"—that is, *if it has a reasonable root system*—it will be considered a "plant." No expert need testify ....

*Edge,* 989 F.2d at 877–78 (quoting *Eves,* 932 F.2d at 860) (emphasis added by Sixth Circuit).

## III. ANALYSIS

### A. Restriction on Government Exhibit 114

■ The Court first turns to the issue of the admission of the non-plant exhibits and whether the Government may use such exhibits to prove the existence of additional marijuana plants beyond the 112 plants already admitted as plants. Again, Defendants alleged that the Government misused Exhibit 114 during questioning Defendants' expert witness, Professor Gross, on cross examination in an attempt to prove the existence of twelve plants in addition to the 112. *See* Def. Br. at 3–4; Tr. 99–115.

Before discussing Exhibit 114 specifically, it is important to understand the context in which it was admitted into evidence. Again, Defendants objected to the admission of Exhibits 113, 115, 116, 118, 119, as well as 114, on the grounds that these exhibits were not relevant to the only issue before the Court, i.e., the number of plants. *See* Tr. at 36–40.

Exhibits 113 and 116 came first, and the following was said in regards to their admission:

> MR. WITZEL [Defendants]: Objection, Your Honor. . . . This goes to loose marijuana, not plants. We're specifically here to determine the hundred plant or more issue. This is marijuana, not relevant to that determination of how many plants.
>
> THE COURT: Well, it wouldn't be relevant to that point, that is, the number of plants, I don't imagine.
>
> MS. ABRAHAM [the Government]: *It's relevant to some other issue that the total number of plants were determined.* It would also be relevant, Judge, if the Defendants decided to take the witness

stand in their own behalf with regard to the plant issue.

> MR. WITZEL: I'll stay with my objection, Your Honor.
>
> THE COURT: Well, I'll receive it. As I say, I agree with [Mr. Witzel]; it's *not relevant to the—on the issue of the number of plants. But I think it may have relevance to other issues here.*

*Id.* at 36–37 (emphasis added). Likewise, in the admission of Exhibits 115, 118, and 119, the following transpired:

> MR. WITZEL: Your Honor, same objection. If it doesn't involve the issue of plants, it's irrelevant.
>
> THE COURT: The objection is to relevancy on the issue of the number of plants?
>
> MR. WITZEL: Right.
>
> THE COURT: I take it [the Government is] not submitting it on that particular issue; is that correct?
>
> MS ABRAHAM: *I'm not submitting this as being a plant. But I think it does go to the calculation,* and it will tie up for the Court with regard *to how the number of plants were calculated in this particular case.*
>
> MR. WITZEL: No further response, Your Honor.
>
> THE COURT: All right. *I'll receive it for that purpose* at least.

*Id.* at 38–39 (emphasis added).

Next, the Court proceeded to the admission of Exhibit 114. Here, the exchange is shorter; nevertheless, when this exchange is read in conjunction with the two previous exchanges, it is clear that the Court's ruling on Exhibit 114 is identical to the rulings on Exhibits 113, 115, 116, 118, and 119:

> MR. WITZEL: *Same objection as before,* Your Honor; doesn't go to plants or the issue here, ultimate issue.

THE COURT: I would agree at this point, but *it's not relevant on the issue of the number of plants*, but it's received. The Government has said it would be *linked to other issues in the matter*. So I'll receive it on—possibly on another issue.

*Id.* at 40 (emphasis added).

These three exchanges make it clear that Exhibits 113, 115, 116, 118, 119, as well as 114 were not admitted into evidence to increase the number of marijuana plants beyond the 112 plants already admitted as plants. *See id.* at 36–40. Rather, these six exhibits were admitted because they were relevant to the process by which law enforcement officers determined plants from non-plants. That is, these exhibits are relevant on the issue of whether law enforcement officers were diligent and careful in distinguishing between plants and non-plants.[4]

Furthermore, as the above transcript excerpts confirm, the Court not only admitted the non-plant exhibits for the purpose of proving care and diligence, the Court also limited the six non-plant exhibits. *See id.* That is, the Court restricted the non-plant exhibits from being used to prove the number of plants. *Cf.* Fed. R.Evid. 105 (limited admissibility of evidence in jury trials).

Thus, the Court held that the non-plants exhibits were inadmissible for one purpose but admitted them for another purpose. *See Nat'l Labor Relations Bd. v. Dayton Motels, Inc.*, 474 F.2d 328, 333 n. 3 (6th Cir.1973) ("The doctrine that evidence inadmissible for one purpose can be admitted for another purpose is firmly established in the law." (citing *Livergood v. S.J. Groves & Sons Co.*, 361 F.2d 269, 274 (3d Cir.1966); 1 Wigmore, *Evidence* § 13 (3d ed.1940))); *Davis v. Nichols*, No. 98–1798, 1999 WL 777548, at *7 (6th Cir. Sept.16, 1999) (same); *cf. Nice v. Chesapeake & Ohio Ry. Co.*, 305 F.Supp. 1167, 1179 (W.D.Mich.1969) ("When faced with evidence which is inadmissible for one purpose but admissible for another, the evidence can ordinarily be admitted if the jury is properly cautioned as to the limited purpose of the evidence and the limited scope within which it may be considered." (citing *McKenzie v. Vandecar*, 105 Mich. 232, 62 N.W. 1031 (1895); 1 Wigmore,

---

4. This point is illustrated by Detective–Sergeant Shenk's testimony on direct examination:

Q: In your experience as a police officer, have you been trained to make a distinction between loose marijuana and marijuana with roots?
A: Yes, I have....
Q: At the time that the search warrant was executed, was there a distinction made with regard to seizure of the evidence, the way the evidence was packaged and counted, between loose marijuana and plants?
A: Yes.... Everything with any type of root structure was considered a plant and ... was counted as a plant. Anything else ... that did not have any type of root structure was considered loose marijuana, and which was packaged different, separately from the plants.
Q: Showing your calculation of the 112 marijuana plants, ... was Government Exhibit 114, which is trash that was in the hallway. Was that counted in your calculation?
A: No, it was not.
Q: Marijuana stems and seeds [(Exhibit 115)] that were taken from the trash the day before the execution of the search warrant, was that counted in the number plants?
A: No.
Q: And Government Exhibit 118, the marijuana that was on the floor ... on newspaper, was that counted in your calculation of the number of plants?
A: No, it was not.
Q: Government Exhibit 119 was the marijuana off to the side next to the aisle, was that counted in your calculation of the plants?
A: No, it was not.
Tr. at 41–42. *See also id.* at 42–43.

*Evidence* § 13 (3d ed.1940))). Moreover, to the extent the Court's contemporaneous limitation on these exhibits, especially Exhibit 114, was unclear, the Court now clarifies and so limits the use of the six non-plant exhibits. *Cf. United States v. Chance*, 306 F.3d 356, 388 (6th Cir.2002) (discussing Fed.R.Evid. 105 and holding that a trial court may give a limiting instruction in a jury trial during final instructions).

At the November 4 hearing, the Government requested that, if the Court held Exhibit 114 to be restricted, the Court reopen proofs and receive Exhibit 114 for the additional purpose of proving the number of plants. *See also* Pl. Br. at 4–5. The Court shall not grant this motion. First, the context in which Exhibit 114 was admitted into evidence demonstrates that, at the time the Government offered Exhibit 114, the Government did not offer Exhibit 114 for the purpose of proving the number of plants. *See* Tr. at 36–40.

Second, the Government through its witness, Detective–Sergeant Shenk, effectively made an admission that Exhibit 114 did not contain marijuana plants. The Government went out of its way at the August 22 hearing to establish that Detective–Sergeant Shenk made a highly accurate determination of plant and non-plant material in this case. As further discussed in the next subpart, the Court believes that Detective–Sergeant Shenk did in fact identify roots on Exhibits 1–112. However, the Court also believes that Detective–Sergeant Shenk was accurate when he determined that Exhibit 114 did not contain marijuana plants:

> Q: In your experience as a police officer, have you been trained to make a distinction between loose marijuana and marijuana with roots?
>
> A: Yes, I have ....
>
> Q: At the time that the search warrant was executed, was there a distinction

made with regard to seizure of the evidence, the way the evidence was packaged and counted, *between loose marijuana and plants?*

> A: Yes.... Everything with any type of root structure was considered a plant and ... was counted as a plant. *Anything else ... that did not have any type of root structure was considered loose marijuana, and which was packaged different, separately from the plants.*
>
> Q: *Showing your calculation of the 112 marijuana plants, ... was Government Exhibit 114, which is trash that was in the hallway. Was that counted in your calculation?*
>
> A: *No, it was not.*

Tr. at 41–42 (emphasis added). This exchange between the Government and its witness is proof that Exhibit 114 was loose marijuana and not marijuana plants. If Detective–Sergeant Shenk is credible in determining plants, then he is also credible in determining non-plants. Therefore, if the Government's witness is to be believed on the issue of what was and was not a plant in this case, the Court shall not reopen proofs and allow the Government to use Exhibit 114 to establish twelve additional plants. The Government cannot have it both ways.

Therefore, the Court, as the trier of fact in this case, shall not consider Exhibits 113, 114, 115, 116, 118, and 119, for the purpose of determining the number of plants, but rather, for the purpose of considering the care and diligence taken by law enforcement officers in the process of distinguishing plants from non-plants.

Consequently, the Court agrees with Defendants' challenge to the Government's use of Exhibit 114 to establish twelve additional plants. As a result, the Court's admitting and limiting of Exhibit 114 shall restrict the trier of fact from considering

Defendants' expert witness' testimony that Exhibit 114 consisted of twelve additional plants.[5] *See* Tr. at 99–102.

Finally, even if the Court held otherwise and allowed the Government to use Exhibit 114 to prove the existence of twelve additional plants, it would not benefit the Government in the end. That is because when Professor Gross' admission on cross examination that Exhibit 114 contained twelve plants, *see id.*, is weighed against Detective–Sergeant Shenk's testimony that Exhibit 114 was loose marijuana and not a plant, *see id.* at 41–42, *supra* note 4, the Court finds, in the alternative, that the Government did not prove the existence of these supposed twelve additional plants beyond a reasonable doubt.

## B. Number of Marijuana Plants

■ The Court now turns to the primary dispute, which involves the number of plants and testimony about roots. The Government maintains that Detective–Sergeant Shenk testified to 112 marijuana plants. That is, 112 of the specimens had readily observable evidence of root formation when they were seized by law enforcement officers. *See* Tr. at 40–41. Defendants counter that Detective–Sergeant Shenk, on cross examination, and Professor Gross, on direct examination, both identified sixteen specimens between Exhibits 78 and 112, which did not have roots *at the time of the August 22–23 hearing. See id.* at 48–53, 90–93; *see also supra* note 3.

Testimony concerning the roots when the plants were seized is a sufficient basis upon which the trier of fact can determine the number of plants involved. The simple fact that Detective–Sergeant Shenk and Professor Gross were unable to identify roots on several plants in the courtroom many months after the plants had been seized does not automatically negate Detective–Sergeant Shenk's earlier testimony that the plants had roots when they were seized.

On this point, Defendants agreed with the Court at the November 4 hearing that the proper time for counting plants with roots was the time of seizure on January 4 and not the time of the hearing on August 22–23. Defendants argue, however, that the fact that Detective–Sergeant Shenk and Professor Gross were unable to identify roots at the August 22–23 hearing raises reasonable doubt as to whether sixteen specimens had roots when they were seized by law enforcement officers on January 4. That is, Defendants are not arguing that the Court should determine the number of plants based on the number of specimens with roots in the courtroom on August 22–23. Rather, Defendants are arguing that because sixteen plants were missing roots in the courtroom, the Court should find that the Government has not proved beyond a reasonable doubt that more than 100 specimens had roots at the time of the seizure on January 4.

After carefully considering Defendants' argument, reviewing the transcript, and weighing the evidence, the Court, as the trier of fact, disagrees with Defendants' argument. While the inability of Detective–Sergeant Shenk and Professor Gross to identify roots at the August 22–23 hearing certainly diminishes the Government's

---

5. At the August 23 hearing, but not in their brief, Defendants made similar objections to the Government's use of Exhibits 119 and 125. *See* Tr. at 95–99. To the extent Defendants still have objections regarding Exhibit 119, the Court shall treat Exhibit 119 in the same manner as the Court treated Exhibit 114 because the Court limited the admission of both Exhibits 114 and 119. *See* Tr. at 38–39. As to Exhibit 125, Defendants' objections are without merit, because, as previously noted, Defendants did not object to Exhibit 125 nor did the Court limit the admission of Exhibit 125. *See supra* note 1 (citing Tr. at 34).

case and raises some doubt about whether there were more than 100 marijuana plants present at the time of seizure, the Court finds that this doubt is not reasonable doubt.

Defendants concede that Detective–Sergeant Shenk testified on direct examination that the plants in question had roots at the time of seizure. *See* Def. Br. at 4. However, Defendants characterize Detective–Sergeant Shenk's testimony as "equivocal" and "too flimsy to support a finding beyond a reasonable doubt that there were more than 100 marijuana plants." *See id.*

The Court disagrees. Detective–Sergeant Shenk's testimony fits squarely within the straightforward *Edge* definition of a plant: his uncontradicted testimony proves that there was "readily observable evidence of root formation" at the time of the seizure. 989 F.2d at 879. In answering questions about Exhibits 78–112 on direct examination, Detective–Sergeant Shenk said the following under oath:

Q. Can you identify Proposed Government Exhibits 78 through 112?

A. Yes. These were also seized from the grow room underneath the TV stand. There were 35 plants....

Q: The plants that are contained in Government's Exhibits 1 through 112, they were all in dirt and in pots at the time you executed your search?

A: Yes, they were.

Q: And you or someone from your team actually removed them from the

pots on the scene in bags brought to the scene?

A: That is true....

Q: Do you recall what, if any, plants you actually removed from their containers?

A: Yes, I *personally* removed all the marijuana plants which were seized from underneath the TV stand.

Q: That would have been ... Government Exhibits 78 through 112?

A: That's correct....

Q: *At the time that you pulled this marijuana out of it's [sic] container, did you make any determination as to whether or not it was a plant?*

A: *Yes, I did. Each plant was pulled out of each plastic cup very carefully and each one of them, when placing them into an evidence bag had some type of root structure, some type of follicles, or hair follicles at the bottom of it, which were considered as roots.*

Tr. at 33–34, 40–41 (emphasis added).

The Court does not find this testimony to be "equivocal" or "flimsy." He was not wavering or equivocating. Rather, the Court finds that, by stating that Exhibits 78–112 "had some type of root structure, some type of follicles, or hair follicles ... which were considered as roots," Detective–Sergeant Shenk was fully describing and explaining what he observed.[6]

Furthermore, the Court notes that *Edge* stated that law enforcement officers need not "undergo botanical training in order to observe marijuana.... [I]f it looks like a

6. Bolstering his credibility on this point, Detective–Sergeant Shenk testified as follows when questioned about Exhibits 78–112 on cross examination:

Q: And you testified *they all had roots* on them?

A: *Yes, they did.*

Q: You pulled every one of them out individually, or–

A: I pulled *each and every one* out very carefully for that purpose, knowing that root structure has to be [there] for a plant to be growing as in that aspect. So each was pulled out of the dirt carefully. A lot them still had dirt left on them—*on the roots.*

Tr. at 46 (emphasis added).

'plant'—that is, *if it has a reasonable root system*—it will be considered a 'plant.'" 989 F.2d at 878 (quoting *Eves*, 932 F.2d at 857, 860) (emphasis added by Sixth Circuit). Thus, the Court finds that Detective–Sergeant Shenk was well qualified, as raised in the prior subpart of this Opinion and Order, to make an *Edge*-determination of what was and was not a plant. *See* Tr. 24–25, 41–43; *supra* Part III.A; *supra* note 4. He said they looked like plants (i.e., he said they had root structures); thus, they are considered plants. *Edge*, 989 F.2d at 878.

It is helpful to compare this case to a recent Ninth Circuit decision in which the Government was in a worse position than it is here and still prevailed on the issue of the number of plants. In *United States v. Patterson*, 292 F.3d 615 (9th Cir.2002), as in this case, law enforcement officers testified that the plants had roots, testified about training and experience in differentiating between plants and non-plants, and testified that in calculating the number of plants, specimens without roots were not included.[7] *See id.* at 626–27. The Ninth Circuit affirmed the conviction and sentence. *See id.* at 633. The noteworthy difference between *Patterson* and this case is that in *Patterson* the marijuana plants at issue were destroyed by law enforcement officers and not available for courtroom use. *See id.* at 626; *cf. United States v. Gallant*, 25 F.3d 36, 38–39 (1st Cir.1994) (facts, testimony, and result similar to *Patterson*). Thus, the Court's reliance on Detective–Sergeant Shenk's testimony is a permissible basis for finding that more than 100 marijuana plants were present in this case. If a defendant could be found guilty beyond a reasonable doubt based on a law enforcement officer's testimony when the marijuana plants were destroyed and not even available at trial, then a defendant could also be found guilty

beyond a reasonable doubt based on a law enforcement officer's testimony when the roots of a small number of plants were detached between the time of seizure and the time of trial.

Defendants further argue, however, that, according to Professor Gross, the roots from the sixteen marijuana plants at issue would not have decomposed. *See* Def. Br. at 4 (citing Tr. at 73–74). The Government, however, adequately addressed this point on cross examination of Professor Gross. She testified that Exhibit 125, the bag that held Exhibits 78–112, contained debris which appeared to be, *inter alia*, the roots in question. *See* Tr. at 98–99. Likewise, Detective–Sergeant Shenk also testified, on cross examination and redirect examination, that the detached roots were in Exhibit 125. *See id.* at 48, 54–55. On redirect, he stated: "[Exhibit 125] has numerous particles in the bottom of it. . . . It appeared to us [that there was] some type of root structure mixed in with the dirt, which easily could have fallen off. This is why [Exhibit 125] was saved." *Id.* at 55.

Additionally, Defendants raise two unpublished Sixth Circuit opinions to suggest that the Court proceed with extra caution in determining the number of plants at issue in this case. *See United States v. Zimmer*, No. 94–2038, 1995 WL 462405, at *1 (6th Cir. Aug.3, 1995) ("[T]he district court clearly erred in finding that all of the specimens [ (including "cuttings") ] were plants."); *United States v. Edge*, ("*Edge II*") No. 93–6079, 1994 WL 385191, at *3 (6th Cir. July 22, 1994) (because, *inter alia*, only five plants were individually examined, the record was found to be unclear, and the district court's number of plants was reduced from 210 to 100).

7.  Video evidence was also available. *See Patterson*, 292 F.3d at 627.

The Court has three responses to this final point raised by Defendants. First, by granting Defendants' request for a suspension of the August 22–23 hearing and for briefing, the Court has exercised adequate caution in this case. Second, this case is markedly different from *Zimmer* because here not all of the specimens that were seized by law enforcement officers are being counted as plants. *See* 1995 WL 462405, at *1–2. Exhibits 113, 114, 115, 116, 118, and 119 and this Court's treatment of these exhibits, especially Exhibit 114, clearly demonstrates that a distinction has been made between plants and non-plants in this case. Third, here, unlike *Zimmer* and *Edge II*, there is not an estimate or uncertain number of plants at issue. *See* 1995 WL 462405, at *1–2, 1994 WL 385191, at *3. Rather, Detective–Sergeant Shenk's direct examination testimony has provided the Court with an exact and uncontradicted number of plants at the time of seizure, which were personally examined and determined to have roots, as required by *Edge*, 989 F.2d at 877–79.

## IV. CONCLUSION

**THEREFORE**, the Court, as the trier of fact, finds that the Government has proved **BEYOND A REASONABLE DOUBT** that both Defendants are **GUILTY** of (1) knowingly conspiring with each other to manufacture **MORE THAN ONE HUNDRED (100) MARIJUANA PLANTS** and (2) knowingly manufacturing and aiding and abetting each other to manufacture **MORE THAN ONE HUNDRED (100) MARIJUANA PLANTS**.

**ACCORDINGLY, IT IS HEREBY ORDERED** that sentencing in this case shall be set for 2:00 p.m. on **FEBRUARY 25, 2003**, at Room 140 United States Courthouse, 600 Church Street, Flint, Michigan.

**IT IS FURTHER ORDERED** that the Probation Department shall prepare pre-sentence investigation reports for both Defendants.

**IT IS FURTHER ORDERED** that both Defendants shall continue to be released on bond, with all conditions remaining in effect.

**SO ORDERED**.